UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LORRAINE EMMONS,

                Plaintiff,

  -v-                                   3:16-CV-1114

BROOME COUNTY,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

THE BARNA LAW FIRM               JAMES F. BARNA, ESQ.
Attorneys for Plaintiff
Clovernook, 9 Rippleton Road
Cazenovia, NY 13035

BROOME COUNTY ATTORNEY'S OFFICE    ROBERT G. BEHNKE, ESQ.
Attorneys for Defendant
Broome County Office Building
60 Hawley Street, P.O. Box 1766
Binghamton, NY 13902

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

**I. INTRODUCTION**

     On September 13, 2016, plaintiff Lorraine Emmons ("Emmons" or "plaintiff") filed this civil rights action against defendant Broome County (the "County" or "defendant"), her former employer, asserting claims for disability discrimination and retaliation under the Americans with Disabilities Act ("ADA") and New York's Human Rights Law ("NYHRL"). Plaintiff's four-count amended complaint alleges that defendant demoted her after she returned from

medical leave, fired her when she complained about the mistreatment, and then retaliated against her by sending out a mass mailing that damaged her future job prospects.

On November 28, 2017, the County moved for summary judgment under Federal Rule of Civil Procedure ("Rule") 56. The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND[1]

In January of 2012, the County hired Emmons as the Executive Assistant to County Executive Debra Preston ("County Executive Preston"), a position classified as "exempt" under the state's Civil Service law. N.Y. Civ. Serv. Law § 41; see also Rusk v. N.Y. State Thruway Auth., 37 F. Supp. 3d 578, 596 (W.D.N.Y. 2014) (characterizing this classification as "terminable at will").

As Emmons explains in her affidavit, the Executive Assistant is the "top clerical position" within the County Executive's Office. In that role, plaintiff collected data, prepared reports and other documents, scheduled meetings, organized County Executive Preston's calendar, coordinated with other managers, and acted as a gatekeeper and point of contact for "stakeholders, managers, department heads, employees, or anyone who wanted access" to Preston. According to plaintiff, she was at County Executive Preston's "beck and call 24 hours per day."

On September 30, 2013, Emmons began a short medical leave of absence precipitated by an urgent medical condition. Two days prior, plaintiff had begun suffering

---

[1] The facts recited here are drawn from a review of the parties' submissions and in particular the County's Statement of Material Facts, ECF No. 24-15, Emmons's responsive statement of material facts, ECF No. 28-2, plaintiff's affidavit in opposition to summary judgment, ECF No. 29, and the parties' proffered exhibits.

intense and debilitating pain that later turned out to be symptoms of an acute coronary event; i.e., a heart attack.  Plaintiff's husband took her to the hospital, where she underwent a procedure to place a stent in her coronary artery.  Plaintiff's treating physician diagnosed her with coronary artery disease and high blood pressure and prescribed various medications to reduce her future risk of the same or similar symptoms.

On October 15, 2013, Emmons returned to her job at the County.  Although she returned to work with "no restrictions," plaintiff continued to attend "cardiac rehabilitation" three times a week for a twelve-week period.  Upon her return to work, plaintiff claims that County Executive Preston and Deputy County Executive Bijoy Datta ("Deputy Datta") treated her "in a cold and negative manner" that "caused [her] to become concerned that [she] would be terminated."

For instance, within the first week, County Executive Preston came into Emmons's office and stated "If you think I can provide you with a stress free environment in the office, well I can't."  Plaintiff claims that she "had not requested any sort of stress accommodation from [defendant]."  Later, plaintiff approached Deputy County Executive John Bernardo ("Deputy Bernardo"), told him about her concerns, and explained "it was illegal to fire [her] because [she] had just had a heart attack."  Plaintiff claims that Deputy Bernardo responded by explaining that "We do what we want" in the County Executive's office.

On October 30, 2013, Emmons contacted County Personnel Officer Thomas Behan ("Behan") about using "sick bank time" for her thrice-weekly rehabilitation appointments.  The Personnel Officer approved plaintiff's request.  In early December of 2013, Deputy Bernardo

called plaintiff into his office[2] to ask her to "consider moving to the receptionist position for [her] health, and having the receptionist do some of [her] duties." When plaintiff asked why, Deputy Bernardo stated defendant "had concerns about phone coverage." Plaintiff concedes she had worked in the reception area on past occasions when phone coverage was needed but responded to Deputy Bernardo that she "felt targeted" and was "worried that they were trying to get rid of [her]." According to plaintiff, Deputy Bernardo replied by stating that "if they wanted to get rid of [her] they could just let [her] go." Plaintiff concedes she "was unhappy" when she left Deputy Bernardo's office.

On December 16, 2013, Emmons came to work to discover her office had been cleaned out and her belongings had been moved to the receptionist desk. Plaintiff "considered the move to receptionist to be a demotion," but concedes in her response to the County's statement of material facts that she was not actually "demoted" at all—plaintiff's job title, salary, and benefits remained consistent with the position of Executive Assistant.

In any event, Emmons's move to the front desk did not last long. According to the County, County Executive Preston's office began receiving complaints from constituents about plaintiff's behavior later that morning. Among other things, defendant contends that people called in to complain that plaintiff "was short with people," "spoke in a harsh tone," "had no interest in what the people were saying," and even "forcibly slam[med] down the telephone receiver." Plaintiff denies "answer[ing] the telephone rudely." That afternoon,

---

[2] The parties dispute several aspects of this encounter. First, defendant contends this meeting took place on December 16. Plaintiff "admits" this date in her response to defendant's statement of material facts but asserts in her own affidavit submitted in opposition that this meeting took place on December 11. Second, defendants contend Bernardo explained to plaintiff that this move was only temporary until she could complete her cardiac rehabilitation. Plaintiff denies being told the change was temporary in nature.

faced with a situation that "was not working," Deputy Bernardo e-mailed plaintiff to advise her to return to her regular work location.

The next morning, County Executive Preston called a mandatory staff meeting. According to the County, the meeting was held to advise staff members that County Executive Preston "was not happy with how people acted regarding decisions made in the Executive Office" and that unhappy people "should speak to her or her Deputy County Executives" about it.

Emmons denies the particularities of this version of events. According to plaintiff, County Executive Preston "singled out every employee and told them how well they were performing their jobs, except she pointedly left [plaintiff] out from her praise." Instead, County Executive Preston looked at plaintiff and stated "I'm the County Executive and if anyone doesn't like it, they can leave." Plaintiff claims County Executive Preston then threw the employee handbook on the table, exclaimed "Merry freaking Christmas," and walked out.

After the staff meeting, Emmons sent an e-mail in which she apologized to "each and every member of the staff" for being "upset with the move" and for her "response" to County Executive Preston's decision to move her to the front office the day before. Notably, plaintiff acknowledges she sent this e-mail but asserts she only did so in an attempt to "placate" County Executive Preston, who she feared might fire her if she did not apologize.

On December 23, 2013, Emmons took a week-long vacation. The day before her scheduled return to work, Deputy Datta called plaintiff into the office to tell her she "was being let go because [County Executive Preston's] life was complicated enough without [her] adding to it." For its part, the County asserts that County Executive Preston, Deputy Datta,

and Deputy Bernardo held a meeting amongst themselves, determined plaintiff's work performance been poor, and decided to fire her on that basis.[3]

On February 6, 2014, Emmons filed a charge of disability discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").

On April 14, 2014, after coming to believe that Emmons had leaked some damaging political information, Deputy Datta published a statement about plaintiff on the Broome County Republican Party website, the Broome County GOP Facebook page, and in a mass e-mail to all Broome County Republicans that read in relevant part:

> Apparently, the Press & Sun Bulletin is running a sensationalized story about a political campaign that I worked on a few years ago. In it, an "anonymous" source shares private emails to assert that I coerced employees into helping on a campaign.
>
> So, now the rest of the story.
>
> I've been fortunate enough to have had the opportunity to supervise and manage many employees over the years. Most of them were really great. Regrettably, a few were not. When that happens, it's in the best interest of everyone involved if the relationship is terminated. One such instance was when the County had to fire Lorraine Emmons in 2013.
>
> Sadly, when that happens, the terminated employee[ ] sometimes feels the need to strike back . . . .

Emmons contends Deputy Datta made this statement in retaliation for her "charge of disability discrimination, and because [her] complaint of disability discrimination reflect[ed] negatively on the administrative of the County Executive." Plaintiff asserts that her name has been "tarnished" among the County's "political circles" in a way that has damaged her job

---

[3] Plaintiff admits that she had been counseled about her work performance on prior occasions and that she had also been responsible for "numerous scheduling errors" in County Executive Preston's schedule.

prospects. Plaintiff has since secured a job as Executive Assistant to the Chief Executive Officer of Vista Hospitality, a hotel chain that hired her in early January of 2015.

## III. LEGAL STANDARD

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Anderson, 477 U.S. at 250 n.4. The failure to meet this burden warrants denial of the motion. Id. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553. Accordingly, summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the

[non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

## IV. DISCUSSION

Emmons asserts discrimination and retaliation claims under both the ADA and the NYHRL, claims which are ordinarily considered together at summary judgment. See, e.g., Boyle v. Lynch, 5 F. Supp. 3d 425, 434 (W.D.N.Y. 2014) (subjecting the plaintiff's ADA and HRL discrimination and retaliation claims "to the same analysis"). However, in this instance the County has raised as an argument in support of dismissal a state law defense that is applicable only to plaintiff's state law claims. Accordingly, the viability of plaintiff's federal claims will be addressed first.

### A. ADA Discrimination

The County contends Emmons's disability discrimination claims must be dismissed because plaintiff has offered nothing to undermine defendant's assertion that she was terminated for her poor work performance. Plaintiff responds that there is a lack of record evidence substantiating defendant's claim of poor work performance and argues that this explanation is just a poc-hoc attempt to disguise unlawful discrimination. Plaintiff urges that where, as here, the employer is a municipal entity, the lack of a written record of discipline combined with an abrupt termination gives rise to a jury question regarding defendant's true motivations.

The parties agree that ADA discrimination claims are evaluated at summary judgment using the three-part burden shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). McMillan v. City of N.Y., 711 F.3d 120, 125 (2d Cir. 2013);

Kaufman v. Columbia Memorial Hosp., 2 F. Supp. 3d 265, 275-76 (N.D.N.Y. 2014) (D'Agostino, J.) (collecting cases in agreement with this principle).

"Under McDonnell Douglas and its innumerable progeny, (1) a plaintiff must first establish a *prima facie* case of discrimination; (2) the burden the shifts to the employer to articulate a legitimate, nondiscriminatory reason fro its actions; if the employer does so, the McDonnell Douglas framework and its presumptions and burdens disappear, leaving the sole remaining issue of 'discrimination vel non;' and thus, (3) the burden shifts back to the plaintiff 'to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" Hong Yin v. N. Shore LIJ Health Sys., 20 F. Supp. 3d 359, 371 (E.D.N.Y. 2014) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).

"For a disability discrimination claim under the ADA, a plaintiff must demonstrate that her disability was at least 'a motivating factor' for the adverse employment action." Hong Yin, 20 F. Supp. 3d at 371 (citing Wesley–Dickson v. Warwick Vall. Cent. Sch. Dist., 973 F. Supp. 2d 386, 397 (S.D.N.Y. 2013).[4] "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Id.

A plaintiff asserting a disability discrimination claim must first establish a prima facie case by showing that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or

---

[4] Although the appropriate causation standard for ADA claims technically remains an open question in this Circuit following recent Supreme Court decisions in Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009) and Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013), most district courts have continued to adhere to the more generous causation standard for purposes of summary judgment. DeAngelo v. Yellowbook Inc., 105 F. Supp. 3d 166, 175 (D. Conn. 2015) (discussing in detail the recent in-Circuit doctrinal developments).

is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." Kaufman, 2 F. Supp. 3d at 276-77 (quoting Kinneary v. City of N.Y., 601 F.3d 151, 156 (2d Cir. 2010)); see also Payne v. PSC Indus. Outsourcing, Ltd. P'ship, 139 F. Supp. 3d 536, 546 (D. Conn. 2015).

However, [w]here, as here, a plaintiff's argument that there are circumstances giving rise to an inference of discriminatory intent is the same as his argument for pretext, they may be analyzed together." D'Antonio v. Petro, Inc., 2017 WL 1184163 at *5 (E.D.N.Y. Mar. 29, 2017) (collecting cases); see also Howard v. MTA Metro-North Commuter R.R., 866 F. Supp. 2d 196, 205 (S.D.N.Y. 2011) ("Second Circuit case law makes clear that a court may . . . skip to the final step in the McDonnell Douglas analysis, as long as the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action.").

First, however, the County disputes whether Emmons's heart condition even qualifies as a disability within the meaning of the ADA. Plaintiff responds that the ADA Amendments Act of 2008 substantially broadened the scope of coverage for disabled employees and emphasizes that her medical diagnosis comes with an extensive medication regimen and attendant lifestyle restrictions.

As amended, the ADA defines "disability" with respect to an individual as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Although the term "substantially limits" should be

"construed broadly in favor of expansive coverage, . . . . not every impairment will constitute a disability within the meaning of this section."  20 C.F.R. § 1630.2(j)(1).

Viewed in the light most favorable to Emmons, she has satisfied this threshold requirement.  DeAngelo, 105 F. Supp. 3d at 175 (accepting for purposes of the plaintiff's prima facie case that his cancer constituted a qualifying disability); Sherman v. Cnty. of Suffolk, 71 F. Supp. 3d 332, 345 (E.D.N.Y. 2014) (discussing broad sweep of ADA's definition of "disability" following 2008 amendments); Najjar v. Mirecki, 2013 WL 3306777 at *5 (S.D.N.Y. July 2, 2013) (accepting plaintiff's recovery from a heart attack as sufficiently disabling condition for purposes of prima facie claim of disability discrimination).

At step two, the County has identified a legitimate, non-discriminatory reason for its decision to terminate plaintiff—her poor work performance.[5]  20 C.F.R. § 1630.2(j)(1)(iii) ("The primary object of attention in cases brought under the ADA should be . . . whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity).  Accordingly, the third and final step of the McDonnell Douglas framework requires an analysis of whether Emmons can demonstrate that defendant's proffered justification was a mere pretext.

"A discrimination claimant may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered

---

[5] Plaintiff argues in passing that her one-day move to the reception desk might also qualify as an analytically distinct "adverse employment action." Pl.'s Mem. at 14 ("There are also issues of pretext regarding the demotion . . . ."). That argument is rejected. "[N]ot everything that makes an employee unhappy is an actionable adverse action." Smart v. Ball State Univ., 8 F.3d 437, 441 (7th Cir. 1996). Although plaintiff may have endured some diminished job responsibilities that day, she concedes that she had covered the phones at that desk in the past and admits that she suffered no decrease in salary, title, or benefits. Regardless of the label plaintiff chooses to affix to this event, on the existing record her relocation to the reception desk on December 16 does not reach the level of "adverse." See, e.g., Granica v. Town of Hamburg, 237 F. Supp. 3d 60, 75 (W.D.N.Y. 2017) (discussing fact-specific nature of this inquiry).

legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Musante v. Mohawk Vall. Comm. Coll., 270 F. Supp. 3d 564, 579 (N.D.N.Y. 2017) (quoting Bombero v. Warner-Lambert Co., 142 F. Supp. 2d 196, 203 n. 7 (D. Conn. 2000)).

Emmons's claim fails at this final step. Granica, 237 F. Supp. 3d at 77 ("In short, the question becomes whether the evidence, taken as a whole, supports a rational inference of discrimination."). Even viewed in the light most favorable to her, no reasonable jury could conclude that discrimination on the basis of plaintiff's disability, or on a negative perception tied to her disability, played a motivating role in the County's decision to terminate her employment. See, e.g., McMillan, 711 F.3d at 129 ("When the reason given by the employer for the adverse employment action is unrelated to the employee's disability, the McDonnell Douglas approach can be used to weed out non-viable claims of discrimination based on circumstantial evidence.").

To be sure, a cautious approach toward summary judgment is always warranted in the fact-intensive context of discrimination cases. See, e.g., Musante, 270 F. Supp. 3d at 581 (denying summary judgment on gender and age discrimination claims even though plaintiff's theory was "far from the most compelling one ever advanced under the anti-discrimination laws"); Hulett v. City of Syracuse, 253 F. Supp. 3d 462 (N.D.N.Y. 2017) (denying summary judgment based on factual dispute over ADA "reasonable accommodation" claim).

"Nonetheless, when an employer provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment

to the employer." Walder v. White Plains Bd. of Educ., 738 F. Supp. 2d 483, 493 (S.D.N.Y. 2010).

That is essentially the case here. Emmons acknowledges that she returned to work without restrictions, concedes she had been counseled about her work performance on prior occasions, and agrees that she committed "numerous" errors when setting County Executive Preston's schedule during her period of employment. And while plaintiff claims Deputy Bernardo stated that her move to the reception desk was "for her health" and denies being told that this move would be "temporary," she acknowledges that she had been asked to cover the office's phones in the past and admits in her response to defendant's statement of material facts that her job title, salary, and benefits remained consistent with the position of Executive Assistant right up until her termination. Cf. Wesley-Dickson, 586 F. App'x at 744 (concluding supervisor's inquiry into the plaintiff's health was "solicitous and not reflective of bias" and observing that "neutral inquiries about the health of an employee whose illness was well known" are generally insufficient to show pretext).

The parties dispute the precise details of Emmons's demeanor on the telephone during her one-day move to the reception desk and the nuances of County Executive Preston's behavior during the next morning's staff meeting, but plaintiff's own affidavit states that Deputy Bernardo told her "it ha[d] been obvious that [she] had been angry about the move." In addition, plaintiff admits that she sent an e-mail in which she apologized for her "behavior," which occurred as a result of her being "upset with the move" to the front office.

Under these particular circumstances, no rational jury could conclude that Emmons's heart condition played a motivating factor in the County's decision to terminate her, that defendant's explanation for her termination was pretextual, or that this explanation was a

pretext for discrimination, either based on plaintiff's heart condition or on defendant's perception of plaintiff's heart condition. Graham v. Boehringer Ingelheim Pharm., Inc., 451 F. Supp. 2d 360, 371 (D. Conn. 2006) (awarding summary judgment to defendant on "regarded as" ADA claim where "all evidence suggests that [the plaintiff] was terminated for precisely the reasons stated by [the defendant]"). Accordingly, defendant's motion as to plaintiff's ADA discrimination claim will be granted.

### B. ADA Retaliation

The County contends the comments that Deputy Datta distributed to various Broome County political circles were not retaliatory. Plaintiff responds that Deputy Datta made these public statements in retaliation for her "charge of disability discrimination, and because [her] complaint of disability discrimination reflect[ed] negatively on the administrative of the County Executive." According to plaintiff, her name has been "tarnished" among the County's "political circles" in a way that has damaged her job prospects.

As with her discrimination claim, Emmons's retaliation claim under the ADA is analyzed using the McDonnell Douglas framework. See, e.g., Equal Emp't Opportunity Comm'n v. Day & Zimmerman NPS, Inc., 265 F. Supp. 3d 179, 199 (D. Conn. 2017). First, the plaintiff must establish a prima facie case by showing "(1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." Id.

Once the plaintiff meets this burden, "a presumption of retaliation arises" and the defendant must then "articulate a legitimate, not-retaliatory reason for the adverse employment action." Granica, 237 F. Supp. 3d at 80; El Sayed v. Hilton Hotels Corp., 627

F.3d 931, 932 (2d Cir. 2010) ("[T]he prima facie case establishes only a rebuttable presumption of retaliation.").

"If the [employer] provides such an explanation, the presumption of retaliation dissipates, and the plaintiff must prove that the desire to retaliate was the but-for cause of the challenged employment action." Carey v. Cnty. of Albany, 2016 WL 4098598 at *6 (N.D.N.Y. July 28, 2016) (Sharpe, J.) (quoting Ya–Chen Chen v. City Univ. of N.Y., 805 F.3d 59, 70 (2d Cir. 2015)).

There is no question that Emmons's filing of an administrative complaint with the EEOC on February 6, 2014 constitutes protected activity and that the temporal proximity between this complaint and the April political statement raises a minimal inference as to causation. Further, the parties proceed from the assumption that plaintiff's theory of retaliation—that a public, post-employment mailing to a group of people with a certain political bent made by an employee's former supervisor—constitutes a sufficient "adverse employment action" for purposes of the statute. Cf. Day & Zimmerman NPS, Inc., 265 F. Supp. 200 (accepting theory that employer's dissemination of former employee's administrative charge of discrimination is adverse employment action for ADA purposes).

And there is no question the County has carried its own minimal burden of articulating a legitimate reason for the challenged conduct. Id. at 202 (observing that any legitimate reason will rebut the presumption triggered by the plaintiff's prima facie case and explaining that "[t]he defendant is not required to prove that the articulated reason actually motivated its actions").

However, even viewing the facts and circumstances in the light most favorable to her, Emmons cannot show Deputy Datta's statement was borne of the County's desire to retaliate

against her for filing the EEOC complaint. First, the mere fact of temporality is insufficient to establish pretext at this step. See, e.g., Clark v. Jewish Childcare Ass'n, Inc., 96 F. Supp. 3d 237, 262-63 (S.D.N.Y. 2015) (explaining that temporal proximity may be used to establish a plaintiff's prima facie claim but is insufficient standing alone at step three of McDonnell Douglas). Second, the only other evidence plaintiff points to in support of this claim of retaliation is language in Deputy Datta's statement itself; i.e., that the County fired plaintiff for her failure to be a "really great" employee.

As discussed above, Emmons has failed to raise a jury issue on whether this stated reason for termination was pretextual, and therefore this statement also fails to establish her retaliation claim under these circumstances as well. Hernandez v. Int'l Shoppes, LLC, 100 F. Supp. 3d 232, 268 (E.D.N.Y. 2015) (concluding same). Simply put, no fact finder could credit plaintiff's account of these events and then reasonably conclude a retaliatory motive was the but-for cause of Deputy Datta's issuance of the public statement. Accordingly, defendant's motion for summary judgment as to plaintiff's ADA retaliation claim will be granted.

### C. HRL Claims

Although Emmons has brought HRL claims based on the same theories set forth above, the County has raised a defense available to it only on these state law claims; i.e., whether plaintiff satisfied certain notice of claim requirements imposed by state law.

"Where, as here, a plaintiff's federal claims will be dismissed before trial, a district court should generally decline to exercise supplemental jurisdiction over any state law claims absent exceptional circumstances." B.A. v. City of Schenectady Sch. Dist., 209 F. Supp. 3d 515, 528 (N.D.N.Y. 2016).

Because summary judgment will be granted as to the federal ADA claims, the continued exercise of supplemental jurisdiction over Emmons's state law claims will be declined. See 28 U.S.C. § 1367(c)(3). Accordingly, plaintiff's HRL claims will be dismissed without prejudice.

## V. CONCLUSION

Emmons has failed to establish that the County terminated her because of her disability, and has failed to demonstrate that Deputy Datta's public statement was issued in retaliation for her administrative complaint. However, plaintiff remains free to test the merits of those theories in a state forum using her analogous state law claims.

Therefore, it is

ORDERED that

1. The County's motion for summary judgment is GRANTED in part and DENIED in part;

2. The County's motion for summary judgment is GRANTED as to Emmons's ADA claims and DENIED as to plaintiff's HRL claims;

3. Emmons's ADA claims for discrimination and retaliation are DISMISSED; and

4. Emmons's HRL claims for discrimination and retaliation are DISMISSED without prejudice.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

Dated: May 24, 2018
       Utica, New York.

United States District Judge